390 P.2d 899

STATE of Arizona, Appellee,

v.

Charles W. GEORGE, Appellant.

No. 1262.

Supreme Court of Arizona.

In Division.

April 1, 1964.

Robert W. Pickrell, Atty. Gen., Phoenix, Norman E. Green, County Atty., of Pima County, Carl Waag, Deputy County Atty., Tucson, for appellee.

Rees, Estes & Browning, Tucson, for appellant.

LOCKWOOD, Vice Chief Justice.

Charles W. George was one of three defendants tried jointly and convicted of selling narcotics. The other two defendants, Bobby Campuzano and Malcolm Sullivan, are not parties to this appeal by George.

The facts are as follows: Joe Valencia, a paid informer, met the defendant Campuzano and conversed with him regarding the purchase of narcotics. Later that same day, Valencia joined Campuzano at the latter's home. The two of them got into a car driven by appellant George. Defendant Sullivan, who owned the car, sat in the front passenger's seat.

Appellant George drove the car and its passengers to a local drive-in restaurant. A conversation took place in the car concerning whether Valencia could purchase any "stuff" from Sullivan and Campuzano. The only testimony regarding this conversation is that Sullivan, Campuzano, and Valencia were talking. There is no testimony that George was a party to the conversation. Following the "drive-in" conversation, they drove back towards Campuzano's house. On the way, Sullivan reached into the headliner of his car and

took out a bottle of clear liquid (later identified as containing Demerol, a narcotic) and a gum wrapper containing approximately fifteen pills (later identified as codein sulfate, a narcotic). Sullivan then handed the bottle and the wrapper to Campuzano and told Valencia he could have the pills on credit. Campuzano then gave the bottle and wrapper to Valencia, who gave the money to Campuzano, who, in turn, gave it to Sullivan. During all this time appellant George remained in the car as the driver. When they arrived at Campuzano's house, Valencia went to his car and drove to the State Office Building in Tucson. He gave the material to state narcotics agents.

Appellant's assignments of error may be grouped into three basic categories: first, the sufficiency of the evidence to sustain a finding that appellant aided and abetted in the sale of narcotics; second, certain evidentiary points; and third the instructions given to the jury.

## SUFFICIENCY OF THE EVIDENCE

Appellant contends the trial court erred in denying his motions for a directed verdict and for dismissal because there was no evidence in the record to show that appellant participated in the commission of the crime, or that he acted in concert with Sullivan and Campuzano, or that he had any knowledge of the presence of narcotics in the automobile, or that he received any of the benefits of the alleged sale. In short, appellant contends he was merely present at the time of the sale.

When reviewing the sufficiency of the evidence to sustain a conviction, this Court will view the evidence in the light most favorable to the state and will resolve all reasonable inferences unfavorably to the appellant-defendant. State v. Silvas, 91 Ariz. 386, 372 P.2d 718 (1962).

Mere presence at the scene of of a crime is insufficient to establish guilt. Carroll v. State, 90 Ariz. 411, 368 P.2d 649 (1962). But in the instant case certain evidence, independent of his presence in the car, connects the appellant with the sale of the narcotics. Because the events leading up to the sale took place in the appellant's presence, the jury could infer that he overheard the conversation and observed the transaction. Appellant made no attempt to disassociate himself from the crime. Instead, he continued to drive the car. Driving after he became aware that narcotics were being sold was a circumstance which the jury could reasonably consider as an indication of aiding and abetting in the crime.

## ADMISSION OF EVIDENCE

During the trial, Valencia stated on cross-examination that he had been a user of narcotics at one time. He stated he was not a user of narcotics at the time of the trial and that it had been "quite some time" but "not long enough" since he had last used

narcotics. The lower court then sustained the prosecutor's objection to a question concerning the type of narcotics used by the witness. Later, during a recess, defense counsel offered to prove that Valencia had used narcotics during the months of January and February of 1961. In chambers, the judge heard testimony from defense witness Gloria Miranda that she knew Valencia was a user of narcotics during January and February of 1961. The court refused to let this witness take the stand and be examined in the presence of the jury because the court found this to be a collateral matter.

 Appellant now contends the use of narcotics by the state's chief witness was not a collateral matter. Instead, appellant takes the position that the use of narcotics may be shown for the purpose of discrediting a witness. However, the record shows that defense counsel advised the court that he wished to adduce Miranda's testimony for the purpose of showing that Valencia was a user of narcotics in *January and February 1961, "contrary to his testimony"*. In other words, the testimony was to be offered for the purpose of impeaching the previous testimony of Valencia. In view of the admission by Valencia that he had been a narcotics user, and his statement that he had not used it for "quite some time" but the time was "not long enough", Miranda's testimony could not be considered impeachment of such statements. If it was offered for the purpose of showing that Valencia was a user of narcotics, he had already admitted that fact, and the Miranda testimony would be cumulative. Defense counsel did not make the offer of testimony on any other basis than impeachment, and is not entitled to construct a different theory for the purposes of appeal. There was no prejudicial error in the court's ruling on this offered testimony.

Appellant also contends that the trial court improperly admitted testimony of items not embraced in the information. Defendants Campuzano and Sullivan and appellant George were charged with the sale of Demerol, a narcotic present in the bottle of clear liquid. The testimony of Valencia adduced at trial, over objection, covered not only the bottle containing Demerol, but also a gum wrapper holding approximately fifteen pills. These pills, a police chemist and a narcotics agent testified, contained codein sulfate.

 This Court recently stated that evidence of other criminal acts is admissible when so blended or connected with the crime that proof of one incidentally involved the other or explains the circumstances of the crime. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964). In the instant case, the testimony of Valencia which disclosed the simultaneous sale of another narcotic not included in the charge

was admissible. This portion of Valencia's testimony merely completed the story of the crime. See Udall, Arizona Law of Evidence, § 115.

■ This "completed story" principle also applies to the testimony of the narcotics agent, William Dunn. Dunn testified that he had followed the car driven by appellant on the day of the crime; that after the sale Valencia had joined him at the State Office Building; and that he had run a field test on the pills before arresting the appellant. Dunn's testimony regarding this field test was simply a link in the story of the crime. Consequently, even if the testimony of the police chemist regarding the narcotic content of the pills was inadmissible, such testimony was not prejudicial. It was merely cumulative evidence relating to the testimony of Dunn which was properly admitted under the "completed story" principle of the Villavicencio case.

## INSTRUCTIONS

Finally, appellant assigns as error two instructions given the jury by the trial court. The first instruction reads as follows:

"A narcotic drug is described by the laws of Arizona, and includes isonipecaine, for which Demerol is a trade name. I want to explain to you that there is a packet of pills in evidence here as Exhibit 4. They were so related to the testimony that I couldn't exclude them. But these defendants are not on trial for selling that packet of pills that were contained in Exhibit 4. The only thing they are charged with is selling the Demerol."

Appellant claims the third sentence—"They were so related to the testimony that I couldn't exclude them"—constitutes an expression of belief in the credibility of that testimony. Appellant also claims that the fourth sentence—"But these defendants are not on trial for selling that packet of pills"—amounts to an assumption that defendants sold the pills.

■ It is well settled that appellate courts will only consider such questions as were raised at the trial with respect to errors or omissions in the giving of instructions. State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); Rule 272, Rules of Criminal Procedure, 17 A.R.S.; Rule 51, Rules of Civil Procedure, 16 A.R.S.; 5 Wharton, Criminal Law Procedure, § 2097. But if such claimed error is so fundamental that it is manifest that the defendant did not have a fair trial, then the reviewing court will consider such error even though the instructions were given without objection below. State v. Marsin, 82 Ariz. 1, 307 P. 2d 607 (1957).

■ In the instant case, no objection to the instruction was made in the court below. Nevertheless, appellant claims it constitutes fundamental error. We disagree.

The language of the instruction did not constitute an expression of opinion by the trial judge as to whether the defendant sold the pills. They were properly in evidence, and the court's instruction merely excluded them from consideration on the question of the crime charged.

Appellant also complains that the instruction as to what constitutes aiding and abetting does not mention the requisite element of intent. This instruction reads as follows:

"All persons, concerned in the commission of the crime, whether they directly commit the act constituting the offense or aid and abet in its commission are principals of the crime that may have been committed."

This in effect follows the statutory definition. A.R.S. § 13–139. However, instructions must be considered as a whole and no case will be reversed because of some isolated paragraph or portion of an instruction which, standing alone, might be misleading. State v. Cassady, 67 Ariz. 48, 190 P.2d 501 (1948) and Tate v. State, 56 Ariz. 194, 106 P.2d 487 (1940).

In the instant case the jury was also instructed:

"In every crime or public offense there must be, there must exist a union or joint operation of act or intent or criminal negligence, the intent or intentions manifested by the circumstances connected with the offense and the sound mind and discretion of the accused. Direct and positive testimony in this case is not necessary to prove intent."

When this "intent" instruction is read in conjunction with the "aiding and abetting" instruction, it becomes apparent that the instructions do not allow a finding of guilt unless the appellant entertained the requisite intent. The jury was not misled on the question of criminal responsibility on the part of the appellant.

Judgment affirmed.

UDALL, C. J., and JENNINGS, J., concur.